

**Emily Ambrose**
**Direct Dial: (612) 343-3263**
**E-Mail: eambrose@blackwellburke.com**

*VIA ECF*

July 20, 2020

Honorable Magistrate Judge Lois Bloom
U.S. District Court Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     *Ramaj v. ConAgra Foods, Inc. et al.*, Case No. 1:19-cv-00284-ENV-LB (E.D.N.Y.)

Honorable Magistrate Judge Bloom:

Conagra respectfully submits this letter relating to the above-referenced case, in response to the Court's May 15, 2020 Text Order. This is not a joint letter. This case has reached a point where the parties do not agree on a path forward. We spoke with Plaintiff's counsel today by telephone and understand Plaintiff will submit a response to this letter.

Notwithstanding the numerous extensions of the schedule provided both before, and after, the COVID-19 crisis, the Plaintiff has not yet taken Rule 30(b)(6) depositions of Conagra's corporate designees – the only open item that was remaining in fact discovery before the deadline of July 17, 2020.

While COVID-19 has prevented the depositions from being rescheduled from the last-scheduled dates of March 11-12, 2020, it is worth noting that there was a six-month delay in taking the deposition before that time. Plaintiff waited until four days before the close of fact discovery (September 11, 2019) to first issue a notice for Rule 30(b)(6) deposition. The notice was excessive – 57 topics – and it took months, including a conference with the Court, to get the topics to a more-manageable number, of 14. The depositions were then scheduled for March 11-12, 2020 (after the Court again had to intervene as to the location) but were postponed at Plaintiff's request after Plaintiff requested additional documents from Conagra, which could have been pursued during the discovery period. While Conagra agreed to the previous deposition extensions and to producing the additional documents (which it did on March 12 without any follow up from Plaintiff's counsel), it now fears that, due to the continuing health crises, and travel restrictions, it is unlikely the depositions can take place in the foreseeable future, at least not in person, as they would require travel in, and out of, at least four states: New York, Illinois, Nebraska, and Minnesota.

At least one court has ruled, notwithstanding COVID-19, that it would not permit never-ending discovery extensions for depositions. *See Zhang v. Sabrina USA Inc.*, Case No. 1:18-cv-12332-AJN-OTW, Doc. 53 (S.D.N.Y. April 15, 2020), attached hereto. As that court recognized, "any deposition noticed for late-February or March 2020 likely would not have taken place due to the

July 20, 2020
Page 2

COVID-19 pandemic, but the pandemic is simply not an excuse for failing to diligently pursue discovery in the seven months prior."

In addition, since the last status letter, there has been a significant development in the form of the court's summary judgment decision in *Urena v. ConAgra Foods, Inc.*, No. 16CV5556PKCLB, 2020 WL 3051558 (E.D.N.Y. June 8, 2020).

Just like this case, the *Urena* case involved product liability claims related to a 12 oz. can of PAM™ Original Cooking Spray sold in a bottom-vented container supplied to Conagra by can manufacturer DS Containers. In *Urena*, the court granted summary judgment on the plaintiffs' design-defect claim because there was no evidence that the design of the can caused the plaintiffs' injuries. *See id.* at \*12 ("the design of the can should not and would not have resulted in the venting of the can."). The court also granted summary judgment on plaintiffs' failure-to-warn claim because the plaintiff failed to establish that the alleged failure to warn was the proximate cause of her injuries. *See id.* at \*14 ("Plaintiffs cannot show that any alleged inadequacy in the warning label – e.g., not advising the consumer of the precise distance at which to keep the can from the stove or heat source or the precise conditions under which a can might heat up to 120 degrees – caused the explosion or Lucita's injuries."); \*15 ("Plaintiff's contention that if the label had specifically warned of the possibility of venting, Lucita could have 'chosen not to use the product at all,' thus demonstrating a causal connection between the proposed alternative label and the accident, borders on the absurd. . . . Indeed, the fallacy of Plaintiffs' argument is demonstrated by Lucita's own conduct. She bought and used the product notwithstanding the existing label's explicit warnings about the flammability of the can's contents and the possibility that it could 'burst' if overheated."). The court did not address the potential for a manufacturing-defect claim because the plaintiffs in *Urena* voluntarily withdrew the claim with prejudice, prior to the filing of the summary-judgment motion.

The *Urena* decision, we believe, foretells the future of this case. On top of the problems in the *Urena* case, Plaintiff's claims are further in jeopardy because there was no witness to the incident. According to Plaintiff's August 30, 2019 deposition testimony, she had been cooking chicken and rice, using both her oven and her stovetop. She left her kitchen for about a half an hour, and when she returned, an explosion occurred. (Dep. 35:18-36:24.) In Plaintiff's words: "As soon as I walked into the kitchen, something exploded like a bomb and I felt like my house go down. I didn't know what happened." (*Id.* at 36:11-15.) Conagra is not aware of any witness in the case who can say that a container of PAM, rather than something with the stove, or other debris in the kitchen, was the cause of the fire or alleged explosion. It is also doubtful that any fire cause and origin expert could credibly offer an opinion on this, as, following the incident, Plaintiff's kitchen was renovated, and the stove was discarded.

Although the cooking spray container is being preserved by Plaintiff's counsel, there is also no indication from a visual inspection that there exists any defect. Similarly, the manufacturing records corresponding with the lot in which the can was made do not suggest any abnormality or defect.

**Conagra's proposal:** While it is conceivable that Plaintiff may be able to identify experts and a theory of defect different than what was put forth in *Urena*, and somehow do so lacking a



July 20, 2020
Page 3

witness to the event, or the stove itself, Conagra requests that there be some showing required by Plaintiff that there will be some basis to move this case forward. While, in ordinary times, the Rule 30(b)(6) depositions would have occurred, the question of whether there is a defect in a product (a product that exists and can be tested) should not turn on corporate representative testimony. Or if it does, Plaintiff should explain why. Absent some showing by the Plaintiff that the case can move forward, Conagra fears that waiting for Rule 30(b)(6) depositions could take many more months, and that the same issues relating to travel and social distancing requirements will also follow the parties into expert discovery. The specifics of how the showing would be made, and whether a teleconference or videoconference with the Court would be an appropriate first step, are all things that can be further discussed, and in line with the Court's preferences.

Please do not hesitate to reach out should you have any questions.

Respectfully,

/s/ Emily Ambrose

Attachment

cc:      All Counsel of Record Via ECF

